No. 26046
No. 26009

## The People of the State of Colorado v. Marcelino Gonzales

(534 P.2d 626)

Decided April 21, 1975.

John P. Moore, Attorney General, John E. Bush, Deputy, E. Ronald Beeks, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Thomas M. Van Cleave III, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Appellant was convicted in the Weld County District Court of criminal impersonation in violation of 1971 Perm. Supp., C.R.S.

1963, 40-5-113.[1] We find no merit to any of appellant's claims for reversal and therefore affirm the judgment.

The evidence presented by the People was for the most part undisputed. It showed that the appellant had made several visits and telephone calls to the place of business known as the Communications Center in Greeley, over a period of several days in November 1972. Each time, he inquired whether a Western Union money order had come in his name. On November 13, having been again told that there was no money order in his name, he asked if there was one for either a Nora or Maria Gonzales. When informed that there was a $70 order for Nora, he requested it, stating that "she is my wife." The clerk at first refused. It was against the company's policy to pay out money to persons other than the named payee. Appellant protested that Nora was sick and that he needed the money for his family. He finally persuaded the clerk to pay him the money, for which he signed a receipt. Nora Gonzales testified at trial that she had never been married to appellant, nor had she ever met him; and that she was in fact married to Andrew Gonzales.

Appellant was arrested a month later in the hospital room of his estranged wife Maria. When the arresting officer questioned him as to his identity, he gave the name of Marcelino Carrion and presented two identification cards, one bearing the name of Marcelino Gonzales and the other, Charles Gonzales. Maria was registered at the hospital under the name of Carrion, the surname of her second husband. She testified that appellant's family often called him "Charlie," and by the nickname "Challo."

Appellant chose not to testify in his own behalf. His theory of defense was that, although he had signed for and taken the money, he had done so without fraudulent intent. There was evidence that Maria had, at appellant's request, written to his parents for money and that appellant on two occasions had received the proceeds from money orders in which he was the named payee.

## I.

Appellant contends that the criminal impersonation statute is facially unconstitutional as violative of the Due Process clauses

---

[1]Now section 18-5-113, C.R.S. 1973.

of the Fourteenth Amendment to the Federal Constitution and Article II, Section 25, of the Colorado Constitution, because of vagueness and overbreadth.

The criminal impersonation statute in pertinent part reads as follows:

*"Criminal Impersonation.* (1) A person commits criminal impersonation if he assumes a false or fictitious identity or capacity, and in such identity or capacity he:
\* \* \* \*

"(e) Does any other act with intent to unlawfully gain a benefit for himself or another or to injure or defraud another."

█ In considering the constitutional challenge, we are guided by certain fundamental principles. The statute is initially presumed to be constitutional and one attacking its validity has the burden of proving its unconstitutionality beyond a reasonable doubt. *Howe v. People,* 178 Colo. 248, 496 P.2d 1040; *Clark v. People,* 176 Colo. 48, 488 P.2d 1097. If the statute is susceptible to different interpretations, one of which is constitutional, this Court will interpret it so as to satisfy constitutional requirements. *People v. Dist. Ct.,* 185 Colo. 78, 521 P.2d 1254; *People v. Heckard,* 164 Colo. 19, 431 P.2d 1014.

█ In examining the statute in the light of appellant's charge of vagueness, we apply the test many times reiterated by this Court: that if the statute gives a fair description of conduct forbidden, and men of common intelligence can readily understand the meaning and application of the statute, then it will not be held to be unconstitutionally vague; conversely, if the statute is so vague that men of common intelligence must necessarily guess at its meaning and application, then it must be held invalid in violation of the constitutional requirements of due process.

█ Having so examined the statute in light of the foregoing test, we find the words used therein to be simple, understandable, and of common usage, sufficiently explicit in terms to fairly inform a person of common intelligence of what conduct is forbidden and will render him liable to criminal penalties. We do not find the statute to be unconstitutionally vague.

█ Nor do we find merit to appellant's contention that the statute is overbroad. A statute may be challenged on the ground of overbreadth if it offends the constitutional principle that gov-

ernmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. *NAACP v. Alabama ex rel. Flowers,* 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964); *Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Aptheker v. Secretary of State,* 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); *Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *City of Lakewood v. Pillow,* 180 Colo. 20, 501 P.2d 744 (1972); *Arnold v. City and County of Denver,* 171 Colo. 1, 464 P.2d 515(1970).

■ Certainly, there are lawful uses of assumed fictitious identities, as was recognized by the legislature when it drafted the statute and limited the proscription to those false impersonations undertaken to accomplish *unlawful* purposes. In view of this limitation, the statute cannot be said to sweep unreasonably broadly and proscribe protected conduct, as contended by appellant.

## II.

■ Appellant contends the evidence was insufficient to sustain the verdict of guilty. He argues that he did not assume a "false or fictitious identity or capacity." His argument is predicated on the fact that when he took the money intended for Nora Gonzales he represented himself as Marcelino Gonzales and signed his name as such. We are not persuaded by this contention.

There is no dispute that appellant misrepresented himself to be the husband of Nora Gonzales and that he received the money in that capacity, presumably for her. This was the assumed false or fictitious identity which enabled appellant to wrongfully obtain the funds which were not his, but were intended for Nora. There is no merit to appellant's position in this regard.

## III.

■ Finally, appellant argues that the court prejudicially erred in admitting, over objection, evidence that appellant gave a false identification at the time he was arrested. He was arrested in the hospital room of his estranged wife, who had registered under the name of Maria Carrion. When asked his name, appellant stated it was Marcelino Carrion. When asked for further identification, appellant produced two cards, one a blood-type card for Charles

Gonzales, and the other a Social Security card with his correct name, Marcelino Gonzales. The court admitted this evidence as bearing upon appellant's guilty knowledge.

In our view, the relevance of this evidence is remote. We do not, however, consider its admission to be prejudicial requiring reversal of the judgment of conviction, especially in view of the undisputed evidence of the false impersonation assumed by appellant by means of which he obtained the funds of Nora Gonzales.

The judgment is affirmed.

MR. JUSTICE ERICKSON concurs in the result.