Felix MONTES–RODRIGUEZ, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 09SC322.

Supreme Court of Colorado,
En Banc.

Oct. 25, 2010.

Rehearing Denied Nov. 30, 2010.*

* Justice Rice, Justice Coats and Justice Eid would grant the petition.

Susan L. Foreman, Denver, Colorado, Attorney for Petitioner.

John W. Suthers, Attorney General, Alexander C. Reinhardt, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

In this appeal, we review the court of appeals' decision to affirm Felix Montes–Rodriguez's conviction for criminal impersonation in violation of section 18–5–113(1)(e), C.R.S. (2010). *People v. Montes–Rodriguez*, 219 P.3d 340 (Colo.App.2009). In relevant part, this statute applies when one assumes a false identity or a false capacity with the intent to unlawfully gain a benefit for himself.[1] § 18–5–113(1)(e). Montes–Rodriguez was convicted of criminal impersonation based on his use of a false social security number on an application for an automobile loan. Montes–Rodriguez admitted to using the false social security number. However, he contested the criminal impersonation charge. He argued that he did not assume a false identity or capacity under the statute because he applied for the loan using his

proper name, birth date, address, and other identifying information. The trial court denied his motion for a judgment of acquittal, and the jury returned a guilty verdict.

A divided panel of the court of appeals affirmed Montes–Rodriguez's conviction. *Montes–Rodriguez*, 219 P.3d at 343. Although the parties had focused on the false-identity element of the crime at trial, the majority of the court of appeals addressed only the false-capacity element of the statute. *Id.* The court of appeals defined false capacity as a false legal qualification, competency, power, or fitness. *Id.* It then reasoned that, by using a false social security number on a loan application, Montes–Rodriguez impliedly asserted his power or fitness to obtain the loan and his ability to work legally in this country to repay the loan. *Id.*

We reverse. Consistent with previous Colorado case law, we hold that one assumes a false or fictitious capacity in violation of the statute when he or she assumes a false legal qualification, power, fitness, or role. We also reaffirm our earlier holding that one assumes a false identity by holding one's self out to a third party as being another person. *See Alvarado v. People*, 132 P.3d 1205, 1207 (Colo.2006). Applying this holding to the present case, we conclude that Montes–Rodriguez neither assumed a false capacity nor a false identity in violation of the statute.

The prosecution failed to prove the false-capacity element of the crime because it presented no evidence that the law requires loan applicants to have social security numbers. In other words, the prosecution failed to present evidence that a social security number gives one the legal qualification, fitness, or power to receive a loan. The prosecution also failed to prove the element of false identity. Montes–Rodriguez's false social security number was one of many pieces of identifying information submitted on his loan application. On the whole, by providing his proper name, birth date, address, and employment information, the evidence establishes that Montes–Rodriguez applied for the loan as himself, not as another person.

---

1. Montes–Rodriguez was not convicted of using a false identity or capacity with the intent to "in-

jure or defraud another," a circumstance listed in subsection (1)(e).

Accordingly, we reverse the court of appeals' opinion upholding Montes–Rodriguez's conviction. We remand this case to that court so that it may be returned to the trial court for entry of a judgment of acquittal.[2]

## II. Facts and Proceedings Below

Montes–Rodriguez was charged with criminal impersonation based on his use of a false social security number in an application for an automobile loan. Montes–Rodriguez applied for the loan through Hajek Chevrolet. In the process, he met with the dealership's finance director, who asked Montes–Rodriguez to complete an application stating his name, birth date, social security number, current and previous addresses, employment information, salary, and more. Montes–Rodriguez provided a false social security number. However, the rest of the information he provided on his application was correct. The dealership submitted copies of Montes–Rodriguez's application to various lenders, and one approved him for credit.

On his application, Montes–Rodriguez provided a social security number that actually belonged to another individual, C.F.[3] When C.F. learned that Montes–Rodriguez had used her social security number, she alerted police. Montes–Rodriguez was arrested and charged with the crime of criminal impersonation. He admitted to using a false social security number on his loan application, but he pled not guilty to the charge of criminal impersonation.

At trial, Hajek Chevrolet's finance director testified that the dealership requires social security numbers on loan applications because this number is needed to conduct online credit checks of applicants. Consequently, one may not receive a loan through Hajek Chevrolet without providing a social security number. No other evidence was presented concerning the role of the social security number in the loan application process.

At the close of the prosecution's case, Montes–Rodriguez moved for a judgment of acquittal. He relied upon *People v. Jones,* 841 P.2d 372, 374 (Colo.App.1992), in which the defendant was acquitted of false impersonation when he applied for several loans using his own name but a false social security number. The *Jones* court held that, by providing his proper name and other accurate identifying information, the defendant had not assumed a false identity on his loan application. *Id.* With little explanation, the Jones court also ruled that the defendant had not assumed a false capacity. *Id.*

The trial court denied Montes–Rodriguez's motion for a judgment of acquittal, and the jury returned a guilty verdict. Montes–Rodriguez appealed, and the court of appeals affirmed the trial court's ruling. *Montes–Rodriguez,* 219 P.3d at 343. Although the parties had focused their arguments to the court of appeals on whether Montes–Rodriguez assumed a false identity in violation of the statute, the majority viewed this as a false-capacity case. The majority defined capacity as a "legal qualification, competency, power, or fitness." *Id.* (citing *People v. Bauer,* 80 P.3d 896, 897 (Colo.App.2003)). It then concluded that because a social security number is required on the loan application, Montes–Rodriguez assumed the false capacity to obtain a loan by providing a false social security number. The court of appeals stated that Montes–Rodriguez "impliedly asserted his power or fitness to obtain the loan, and his ability to work legally in this country, and thereby repay it." *Id.* Because the court of appeals relied on false-capacity grounds, it did not reach the parties' arguments concerning false identity.

Writing in dissent, Judge Jones agreed with the majority's definition of false capacity but disagreed with the application of that term in this case. *Id.* at 345 (Jones, J., dissenting). He reasoned that Montes–Rodriguez had not assumed a false legal qualification or power to receive a loan because one is not legally required to have a social security number in order to apply for or receive a loan. *Id.* He countered the majority's con-

---

**2.** Because we conclude that Montes–Rodriguez did not assume a false or fictitious identity or capacity, we do not decide whether he had the requisite intent to unlawfully gain a benefit.

**3.** No evidence was presented that Montes–Rodriguez knew C.F. or knew that the social security number he used actually belonged to another individual.

clusion that Montes–Rodriguez impliedly asserted his ability to work legally in this country by noting that there was no evidence in the record to support this conclusion or to suggest that the dealership required social security numbers in order to ascertain the legal status of applicants. *Id.*

Judge Jones next addressed the parties' arguments concerning false identity. Following court of appeals precedent, he stated that one assumes a false or fictitious identity by " 'hold[ing] oneself out as someone that he or she is not [and assuming] the identity of another person, whether that other person is real or fictitious.' " *Id.* (quoting *Jones,* 841 P.2d at 374). He then concluded that, because Montes–Rodriguez applied for a loan using his correct name, employment information, address, and more, he had not assumed a false identity. He explained, "[i]n light of the totality of the information provided, which included only one item of false information (the Social Security number), [Montes–Rodriguez] did not seek the loan pretending to be anyone other than himself...." *Id.* at 345–46. Consequently, Judge Jones would have reversed Montes–Rodriguez's conviction and remanded the case for entry of a judgment of acquittal. *Id.* at 346.

We granted Montes–Rodriguez's petition for certiorari to consider whether the court of appeals erred in its interpretation and application of the terms "false or fictitious identity or capacity" in the criminal impersonation statute.[4] We now reverse.

## III. Standard of Review

■■ When reviewing the denial of a motion for a judgment of acquittal, we "review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the convictions." *Dempsey v. People,* 117 P.3d 800, 807 (Colo.2005). This court must ask whether the relevant evidence, viewed in the light most favorable to the prosecution, is " 'substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.' " *People v. Gonzales,* 666 P.2d 123, 127 (Colo.1983) (quoting *People v. Bennett,* 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)).

The material facts in this case, however, are largely undisputed. Montes–Rodriguez admitted to using a false social security number on his loan application. The evidence established that he otherwise provided correct identifying information. Consequently, we are not required to weigh the evidence. Rather, we must construe the statute and then apply it to the facts established at trial.

■■ We review issues of statutory construction and application de novo. *CLPF–Parkridge One, L.P. v. Harwell Invs., Inc.,* 105 P.3d 658, 660 (Colo.2005); *see also People v. Matheny,* 46 P.3d 453, 462 (Colo.2002) (explaining that "law application, which involves the application of the controlling legal standard to the facts established by the evidence and found by the trial court is a matter for de novo appellate review, at least where constitutional rights are concerned"). In construing a statute, our primary purpose is to effectuate the legislature's intent. *People v. Cross,* 127 P.3d 71, 73 (Colo.2006). Therefore, we first consider the plain language of the statute. *Id.* If the statutory language is ambiguous, we employ several canons of interpretation to resolve the ambiguity. *O'Donnell v. State Farm Mut. Auto. Ins. Co.,* 186 P.3d 46, 49–50 (Colo.2008). We attempt to interpret the statute in a manner that gives "consistent, harmonious, and sensible effect to all [of its] parts." *Id.* at 50. We avoid interpretations that would render any words or phrases superfluous or would lead to illogical or absurd results. *People v. Null,* 233 P.3d 670, 679 (Colo.2010).

## IV. Criminal Impersonation Statute

One commits criminal impersonation whenever he or she knowingly assumes a false or fictitious identity or capacity and uses that identity or capacity to perform one of the acts described in subsections (1)(a) through

**4.** We granted certiorari on the following issue: "Whether the court of appeals' opinion erred in its interpretation of the criminal impersonation statute, and its terms false or fictitious identity or capacity, thus conflicting with the applicable decisions of this court and of other divisions of the court of appeals."

(1)(e) of the statute. § 18–5–113. In its entirety the statute reads:

(1) A person commits criminal impersonation if he knowingly assumes a false or fictitious identity or capacity, and in such identity or capacity he:

(a) Marries, or pretends to marry, or to sustain the marriage relation toward another without the connivance of the latter; or

(b) Becomes bail or surety for a party in an action or proceeding, civil or criminal, before a court or officer authorized to take the bail or surety; or

(c) Confesses a judgment, or subscribes, verifies, publishes, acknowledges, or proves a written instrument which by law may be recorded, with the intent that the same may be delivered as true; or

(d) Does an act which if done by the person falsely impersonated, might subject such person to an action or special proceeding, civil or criminal, or to liability, charge, forfeiture, or penalty; or

(e) Does any other act with intent to unlawfully gain a benefit for himself or another or to injure or defraud another.

§ 18–5–113. The statute therefore consists of two parts: the knowing assumption of a false identity or capacity and the use of that identity or capacity to perform certain acts or to acquire certain benefits. *See Alvarado*, 132 P.3d at 1208.

In the present case, Montes–Rodriguez was convicted of assuming a false identity or capacity "with the intent to unlawfully gain a benefit for himself," in violation of subsection (1)(e) of the statute. § 18–5–113(1)(e). The portion of subsection (1)(e) dealing with the terms "to injure or defraud another" was not an issue in this case and the trial court did not instruct the jury on this part of the statute. Montes–Rodriguez argues that the prosecution failed to prove that he assumed a false identity or a false capacity under the statute. Although the court of appeals affirmed Montes–Rodriguez's conviction on false-capacity grounds and declined to consider the question of false identity, the conviction could be affirmed on either identity or capacity grounds. The parties raised the identity issue at trial and have addressed it in their arguments to the court of appeals and to this court. Hence, we consider both issues to determine whether Montes–Rodriguez's conviction may have been supported by the evidence.

## A. False Capacity

Relying on prior Colorado case law, the majority of the court of appeals interpreted false capacity to mean a false "legal qualification, competency, power, or fitness." *Montes–Rodriguez*, 219 P.3d at 343 (citing *Bauer*, 80 P.3d at 897). Both the prosecution and Montes–Rodriguez agree with this definition in their respective briefs to this court. Judge Jones used this definition in his dissent as well. *Id.* at 345 (Jones, J., dissenting). Looking at the statutory scheme as a whole, it is evident that false capacity refers to a false *legal* capacity. The statute prohibits the assumption of a false capacity, when that capacity is used to perform any of the acts described in subsections (1)(a) through (1)(e) of the statute. § 18–5–113. Each of the acts described in these subsections directly involves the law. Each subsection either creates relationships defined in law or involves actions before the court. For example, subsection (1)(a) applies when one assumes a false capacity in order to marry or pretend to marry another. § 18–5–113(1)(a). The marital relationship is defined by law, and one who marries undertakes certain legal rights and responsibilities. *See In re Marriage of Schelp*, 228 P.3d 151, 156 (Colo. 2010) (stating that spouses are in a fiduciary relationship with one another); *In re Marriage of Manzo*, 659 P.2d 669, 674 (Colo.1983) (same). Whether one has the capacity to marry is also a matter governed by law. *See, e.g.*, § 14–2–106(1)(a)(I), C.R.S. (2010) (establishing requirement for obtaining a marriage license); § 14–2–110(1)(a), C.R.S. (2010) (prohibiting marriages entered into prior to the dissolution of an earlier marriage). Consequently, one who claims the false capacity to marry also claims the false legal qualification or power to enter into that relationship.

The other subsections of the statute operate similarly. Subsection (1)(b) applies when one uses a false capacity to act as bail or

surety in an action before a court. § 18–5–113(1)(b). The role of bail or surety before a court is subject to extensive statutory regulation. *See* § 16–4–101, et seq., C.R.S. (2010). One who assumes this capacity assumes distinct rights and responsibilities under the law. Likewise, subsection (1)(c) applies when one assumes a false capacity to confess a judgment that may be recorded by law. § 18–5–113(1)(c). Subsection (1)(d) applies when one uses a false capacity to subject another to civil or criminal liability. § 18–5–113(1)(d). Both of these subsections involve actions with direct legal consequences. Although subsection (1)(e) is written in broader terms, it also requires that one assume a false capacity in order to gain a benefit *unlawfully* or to injure or defraud another. § 18–5–113(1)(e). In sum, each of the enumerated circumstances involves the assumption of a false capacity to perform an act or establish a relationship that has a distinct legal significance. In other words, each subsection involves the assumption of a false legal capacity.

Common usage also supports the interpretation of capacity as the legal qualification, power, fitness, or role in which one performs an act. *Webster's Third New International Dictionary* defines capacity as one's "legal qualification, competency, power, or fitness." *Webster's Third New International Dictionary* 330 (2002). *Black's Law Dictionary* defines it as the "role in which one performs an act." *Black's Law Dictionary* 199 (7th ed. 1999).

Finally, Colorado case law supports this interpretation of capacity. In *People v. Gonzales*, we ruled that the defendant violated the criminal impersonation statute when he obtained a money order by falsely claiming that he was the husband of the named payee. 188 Colo. 272, 276, 534 P.2d 626, 629 (1975). The defendant argued that he had not committed criminal impersonation because he had given and signed his actual name on the receipt for the money order. *Id.* We rejected this argument, explaining that the defendant "misrepresented himself to be the husband of [the payee] and that he received the money in that capacity, presumably for her." *Id.* In other words, the defendant assumed a false or fictitious capacity by claiming the benefits of a false legal relationship.

In *Bauer,* the court of appeals relied on a similar approach to hold that the defendant had assumed a false capacity by continuing to practice law after his bar license had been suspended. 80 P.3d at 898. The court of appeals observed that "one of the common meanings of 'capacity' is 'legal qualification, competency, power, or fitness.'" *Id.* at 897 (quoting *Webster's Third New International Dictionary* 330 (1986)). The court also noted that capacity may be defined as "'[t]he role in which one performs an act.'" *Id.* (quoting *Black's Law Dictionary* 199 (7th ed. 1999)).

The defendant in *Bauer* argued that he had not assumed a false capacity because he had the skill and knowledge of an attorney. *Id.* at 898. The court rejected this argument, explaining that "possessing the knowledge and skill to perform the functions of an attorney is not the equivalent of the capacity to act as an attorney." *Id.* The court of appeals reasoned that capacity, as used in the statute, does not refer to one's abilities but rather to one's legal qualifications. *Id.* The court observed that, "[o]nce [the] defendant's license was suspended, he no longer had the legal qualifications to act in the capacity of an attorney." *Id.* (emphasis added).

Considering the statutory scheme as a whole, the common meaning of the word, and the relevant case law, we hold that one assumes a false or fictitious capacity in violation of the criminal impersonation statute when he or she assumes a false legal qualification, power, fitness, or role.

### B. False Identity

■ Having defined the element of false capacity, we now consider the element of false identity. We recently defined this term in *Alvarado,* 132 P.3d at 1207. In that case, the police stopped a car in which Alvarado was a passenger. *Id.* at 1206. The police arrested the driver and then began to question Alvarado. *Id.* Alvarado had an outstanding warrant for his arrest but gave the police a false name and birth date. *Id.* When the police ran a warrant check under that false information, no warrants were

found. *Id.* We stated that a "common sense reading and application of the statute prohibits holding oneself out to a third party as being another person when asked who he or she is." *Id.* at 1207. We therefore concluded that, by giving a false name and birth date to the police, Alvarado held himself out as being another person and had therefore assumed a false identity. *Id.* at 1208.

The court of appeals resorted to a similar definition of false identity in *Jones*, 841 P.2d at 374. In that case, the defendant applied for a number of loans using a false social security number. *Id.* at 373. His application included otherwise accurate identifying information, including his proper name. *Id.* The court stated that "[t]he common meaning of the phrase 'assumes a false or fictitious identity' is to hold oneself out as *someone* that he or she is not." *Id.* at 374 (emphasis in original). Applying this definition, the court of appeals held that the defendant had not assumed a false or fictitious identity on his loan application. *Id.* The court noted that the false social security number was "but one of several items of identifying information" on the loan application and that the "defendant supplied accurate answers to a number of the personal questions asked." *Id.* The court therefore concluded that Jones had not assumed a false identity. It explained that, under the circumstances, "the failure to provide an accurate social security number was not equivalent to the assumption of another persona, as alleged in the information." *Id.*

Consistent with our definition of the term in *Alvarado* and the court of appeals' opinion in *Jones*, we hold that one assumes a false identity under the statute by holding one's self out to a third party as being another person. We do not decide as a matter of law what factual circumstances are sufficient to constitute holding one's self out as being another person.

### V. Application

■ Having interpreted the terms false capacity and false identity under this statute, we apply them here. Initially, we consider whether Montes–Rodriguez's use of a false social security number constituted the assumption of a false capacity.

At trial, Hajek Chevrolet's financial director testified that the dealership requires social security numbers in order to perform online credit checks. The majority of the court of appeals concluded that Montes–Rodriguez therefore assumed a false capacity to obtain the loan because he could not have done so without a social security number. The prosecution urges this rationale to us as well. This conclusion, however, confuses the lender's requirements to obtain a loan with the legal requirements to obtain a loan. Although Montes–Rodriguez may have lacked the practical capacity to obtain a loan through Hajek Chevrolet because they could not check his credit without a social security number, he did not lack the *legal* capacity to obtain a loan. The prosecution presented no evidence that a social security number provided Montes–Rodriguez with the false *legal* qualification, power, or fitness to obtain a loan. As Judge Jones noted in his dissent, "[e]xcept perhaps as to claiming Social Security benefits, possessing a Social Security number does not give a person a legal status that he or she would not [otherwise] possess...." *Montes–Rodriguez*, 219 P.3d at 345 (Jones, J., dissenting).

Likewise, the record does not support the majority of the court of appeals' conclusion that Montes–Rodriguez assumed a false capacity to receive a loan because he impliedly asserted his ability to work in this country legally. The prosecution did not present any evidence concerning a person's ability to work legally in this country or whether one must have a social security number to do so.

■ Because we conclude that Montes–Rodriguez did not assume a false capacity, we next address the evidence concerning the element of false identity. Montes–Rodriguez's social security number was but one of many pieces of identifying information listed on his loan application. He gave his correct address, birth date, and place of employment. Most importantly, he gave his correct name. In the face of so much accurate identifying information, we cannot conclude that Montes–Rodriguez pretended to be another person in his loan application simply because he supplied a false social security number.

Hence, we conclude that Montes–Rodriguez did not assume a false identity. Because the evidence failed to show that Montes–Rodriguez assumed either a false identity or capacity in violation of the elements of the criminal impersonation statute, his motion for a judgment of acquittal should have been granted.

## VI. Conclusion

For the reasons stated above, we reverse the court of appeals' opinion. We remand this case to that court so that it may be returned to the trial court for entry of a judgment of acquittal.

Justice COATS dissents, and Justice RICE and Justice EID join in the dissent.

Justice COATS, dissenting.

I not only believe the majority misconstrues the Criminal Impersonation statute and reaches the wrong result in this case; but by slicing, dicing, parsing, distinguishing, and generally over-analyzing (over the course of some thirty paragraphs) one short and relatively self-explanatory phrase, the majority manages to exclude from the statutory proscription conduct lying at its very heart. Because I consider the defendant's deliberate misrepresentation of the single most unique and important piece of identifying data for credit-transaction purposes to be precisely the kind of conduct meant to be proscribed as criminal by this statute, I respectfully dissent.

As relevant here the statute prohibits using a false or fictitious identity or capacity for the purpose of unlawfully gaining a benefit or defrauding someone else.[1] A social security number is for many purposes the single most effective and relied-upon means of distinguishing one person from another. Unlike a name, date of birth, physical de-

scription, or other means of identification, there is a one-to-one correspondence between a social security number and a specific person. In addition to other kinds of personal and financial history, the credit history of any particular individual is typically available only through his social security number. By claiming another person's social security number in a credit transaction, as the defendant did in this case, a person necessarily identifies himself as the person with the credit history associated with that number. Even if he provides a number that has never yet been assigned to anyone, he nevertheless identifies himself as a fictitious person with an unblemished credit history. In either case, he falsely identifies himself for the specific purpose of fraudulently entitling himself to credit, or worse, to unpaid-for property on the basis of that credit.

Contrary to the assertions of the majority, I do not believe its interpretation is in any way limited, or even guided, by our prior precedents. We have never yet attempted to comprehensively define the terms "identity" or "capacity" or suggest in any way that they are used in this statute as mutually exclusive alternatives. Quite the contrary, we have expressly characterized misrepresentation as the husband of another and receiving money "in that *capacity*" as "the assumed false or fictitious *identity* which enabled appellant to wrongfully obtain the funds which were not his." *People v. Gonzales*, 188 Colo. 272, 276, 534 P.2d 626, 628 (1975) (emphasis added). Capacity is clearly one of a person's identifying characteristics and by expressly including that term along with "identity," the statute merely indicates the breadth it intends for the term "identity."

By the same token, when we held in *Alvarado v. People*, 132 P.3d 1205, 1208 (Colo. 2006), that the defendant assumed a false

---

1. Although the majority's rationale for reversal appears to rest entirely on its understanding of the phrase, "assumes a false or fictitious identity or capacity," which appears in subsection 113(1) of the statute, it nevertheless pointedly asserts that the defendant was not convicted according to the "injure or defraud" language in subsection 113(1)(e). Maj. op. at 925 n. 1 & 928. In a single short phrase, subsection (1)(e) prohibits falsifying one's identity or capacity with the intent to either unlawfully gain a benefit or defraud another, and the defendant was clearly charged with and convicted of violating section 18–5–113(1)(e). Unless the majority implies that falsifying a loan application does not harm the lender simultaneously with benefiting the borrower, and that the words "identity or capacity" somehow take on one meaning when the defendant's intent is to benefit himself and another when his intent is to cause loss, I fail to appreciate the significance of this disclaimer.

identity by giving a false name and date of birth, and thereby held himself out to be another person, we did not purport to comprehensively define the phrase "false or fictitious identity," and we certainly never suggested that assuming a false identity is accomplished only by giving of a false name. Apart from having no precedential value for this court, the court of appeals' demonstration in *People v. Bauer*, 80 P.3d 896, 897–98 (Colo.App.2003), that the defendant in that case assumed a false "capacity," according to one of the commonly-accepted definitions of the term, similarly never suggested that the statutory term should be limited to that aspect of the definition, much less that it should be further restricted to "legal" capacity, as the majority does today.

Although it also has no precedential value for this court, a different panel of the court of appeals found, almost twenty years ago, that a social security number on a loan application was but one of a number of requested items of identification, and in light of other truthful disclosures, that giving a false social security number did not amount to assuming a false identity. *See People v. Jones*, 841 P.2d 372, 374 (Colo.App.1992). Because the People did not seek a writ of certiorari in that case, this court was not given the opportunity to review that holding directly. Whether or not it might be factually distinguishable from the case before us today, I believe *Jones* was wrongly decided, and unlike the majority, I would expressly overrule it. Where the nature of a transaction is such that a false social security number is not merely incidental but is rather the single piece of identifying data upon which the fraud in question depends, it cannot be assessed as merely "one of many pieces of identifying information." Maj. op. at 925. For purposes of the fraudulent transaction at issue, it is clearly the assumption of a false or fictitious identity.

Criminal Impersonation is a relatively minor, inchoate offense. Using personal identifying information like a social security number without authority to obtain credit is now treated much more expressly and punished much more severely. *See* § 18–5–902, C.R.S. (2010) (Identity Theft). Although the majority opinion may therefore have little practical effect in future cases, I object to its approach of so narrowly parsing the individual terms chosen by the legislature that the type of conduct at which its proscription is most directly aimed ultimately falls through the cracks and remains unregulated. I therefore respectfully dissent.

I am authorized to state that Justice RICE and Justice EID join in this dissent.