No. 51,120

State of Kansas, *Appellee,* v. Clarence E. Ferguson, *Appellant.*

No. 51,171

State of Kansas, *Appellee,* v. Daley D. Washington, Jr., *Appellant.*

No. 51,215

State of Kansas, *Appellee,* v. Arzo Tucker, Jr., *Appellant.*

(618 P.2d 1186)

Opinion filed November 1, 1980.

*Mark F. Anderson,* of Kidwell & Williamson, Chartered, of Wichita, argued the cause and was on the brief for Clarence E. Ferguson, appellant.

*Antonio L. Ortega,* of Blase & Blase, of Wichita, argued the cause and was on the brief for Daley D. Washington, Jr., appellant.

*Duncan A. Whittier,* of Hybsha, Whittier & Holmes, P.A., of Wichita, argued the cause and was on the brief for Arzo Tucker, Jr., appellant.

*Nola Tedesco* and *Michael Barbara,* assistant district attorneys, argued the cause, and *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, were with them on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: These three consolidated appeals are by three defendants who were convicted of various charges of aggravated kidnapping, aggravated sodomy, rape and aggravated robbery arising from a single sordid escapade in which all three defendants participated. It occurred on September 28, 1978, at a floral shop in Wichita, Sedgwick County, Kansas. Two women and one man had remained at the shop after hours that evening to prepare flower arrangements for a wedding which was scheduled the next day.

Four black males entered the premises and ordered the three victims to lie on the floor of the back room of the flower shop. Money was taken from all three victims. Guns were used by the robbers. This formed the basis for the three aggravated robbery charges. One of the women in the shop was fondled by one of the robbers, and then a flower shears was inserted in her vagina. The robbers continued to mistreat and beat her until she became unconscious. She was dragged from the back of the shop into a private parking lot. The second woman was forcibly pulled out through the back door of the shop into the same private parking lot. She saw a naked black male astride the first woman's hip section and observed his pumping action as he pressed against the body of the unconscious woman. A gun was placed against the eye socket of the second woman as she lay in the parking lot. Her clothes were torn from her lower body. Then while two men took turns and raped her, the third man while holding the gun to her head forced her to take his penis in her mouth.

The removal of the two women from the shop to the parking area behind the shop formed the basis for the aggravated kidnapping charges. Forcing the second woman to take the man's penis in her mouth was the basis for the sodomy charge and the

rape was committed on this same woman. The four black males were charged with these crimes. Those accused included the three named defendants, Clarence E. Ferguson, Daley D. Washington, Jr., and Arzo Tucker, Jr., together with Lawrence E. Evans who pled guilty during the trial to three counts of armed robbery. Evans apparently took no part in the rape and sodomy. The State accepted a plea to three counts of aggravated robbery and dismissed the other counts. Evans turned State's evidence.

Ferguson, Washington and Tucker were convicted and each filed a separate appeal. The three appeals were consolidated for oral arguments. Several of the points raised are duplicative and may be disposed of by consolidated treatment. Therefore, in the interest of time and space, a consolidated opinion is filed covering all three appeals.

Point one is raised by all three defendants. Request was made for separate trials. It is first claimed the defenses of Tucker and Washington were antagonistic, and secondly, it is claimed none of the charges should have been joined.

In *State v. Cameron & Bentley,* 216 Kan. 644, 649, 533 P.2d 1255 (1975), this court pointed out that in order for persons who participate in a crime or connected crimes to obtain an order for separate trials, severance must be based on some ground sufficient to establish actual prejudice. The usual grounds for a severance are (1) the defendants have antagonistic defenses, (2) important evidence in favor of one of the defendants would be admissible at a separate trial but would not be admissible at a joint trial, (3) evidence incompetent and prejudicial as to one defendant would be proper relevant evidence as to another, (4) a confession of one defendant, if found to be admissible, would prejudice the jury against codefendants, and (5) one of the defendants would become a competent and compellable witness in event of separate trials of the other defendants.

Now we turn to the question of separation of charges. Two or more defendants may be charged in the same complaint, information or indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting the crime or crimes. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count. K.S.A. 1979 Supp. 22-3202(3); *State v. McQueen & Hardyway,* 224 Kan. 420, 422, 582 P.2d 251 (1978).

All three defendants sought to establish an alibi defense. It would seem almost impossible to successfully establish antagonistic defenses when all are claiming separate alibi defenses.

As a basis for the claim of antagonistic defenses, Ferguson made an offer of testimony from two fellow jail inmates and from Vern Miller, who were supposed to have overheard Tucker say that Washington was not involved in these crimes. Such evidence if admissible and obtainable would tend to implicate Tucker in the crime and relieve Washington. The proffer was made orally with nothing to actually establish that such testimony was available from Tucker. Tucker did not take the stand. He refused to testify at the trial. Vern Miller was not subpoenaed and he did not testify. His testimony as to Tucker's statement would have been inadmissible hearsay. The evidence of Washington's participation in these crimes was overwhelming. He was identified by the three victims and by Evans, an accomplice. In this case the defenses were not antagonistic. The evidence proffered was merely antagonistic to statements of other witnesses. The defenses of alibi were not antagonistic.

We have examined the record of the trial and after applying the rules set out above which govern severances and joinder of charges we hold it was not error to try the three defendants under joint charges at a joint trial.

All three appellants claim error because the court refused a requested instruction cautioning the jury as to consideration of testimony by an accomplice. The accomplice instruction suggested in PIK Crim. 52.18 (1979 Supp.) reads:

"An accomplice witness is one who testifies that he was involved in the commission of the crime with which the defendant is charged. You should consider with caution testimony of an accomplice *if it is not supported by other evidence.*" Emphasis supplied.

In *State v. Moody,* 223 Kan. 699, 576 P.2d 637, *cert. denied* 439 U.S. 894 (1978), this court held it was error not to give the above instruction when the accomplice testimony was only partially corroborated. In *Moody* the court pointed out it may not be reversible error if the matter is sufficiently covered in other instructions given, and after examining the instructions actually given the court in *Moody* held there was no reversible error. The instructions given in our present case which bear upon the question are:

"It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use that knowledge and experience which you possess in common with men in general, in regard to the matter about which a witness has testified. You may take into account his ability and opportunity to observe and know the things about which he or she has testified, his memory, manner, and conduct while testifying, any interest he may have in the result of this trial, and the reasonableness of his testimony considered in the light of all the evidence in this case.

. . . .

"If you find that any witness has willfully testified falsely concerning any material matter, you have a right to distrust the testimony of that witness in other matters, and you may reject all or part of the testimony of that witness, or you may give it such weight as you think it deserves. You should not reject any testimony without cause."

This instruction is almost identical to that given in *Moody* which was held sufficient to cure the failure to give the accomplice instruction. The trial court has discretion in giving its instructions to the jury and on appeal the instructions should be approved, if, after considering them in their entirety, they properly and fairly state the law as applied to the facts in the case. K.S.A. 60-251(*a*); *State v. Acheson,* 3 Kan. App. 2d 705, ¶ 6, 601 P.2d 375, *rev. denied* 227 Kan. 927 (1979).

All appellants raise the issue of late endorsement of witnesses, Hauk, Brooks, and Evans. K.S.A. 1979 Supp. 22-3201(6) directs the prosecutor to endorse the names of all witnesses known to the prosecutor upon the complaint or information at the time of filing the same. The statute ends by stating:

"Said attorney may endorse thereon the names of other witnesses as may afterward become known to said attorney, at such times as the court may by rule or otherwise prescribe."

This statute makes late endorsement of witnesses discretionary with the trial court. It may in the interest of truth and justice permit late endorsement of the names of witnesses provided the opposing party or parties are given time to interview said witnesses and provide for cross-checking their testimony. *State v. Costa,* 228 Kan. 308, Syl. ¶¶ 4, 5, 613 P.2d 1359 (1980). The test to be used in determining whether permission should be granted is whether the defendant's rights will be prejudiced. *State v. Rueckert,* 221 Kan. 727, 730, 561 P.2d 850 (1977).

In the present case the trial court stated:

"Counsel may not have been aware of these individuals, but I'm going to give Counsel an opportunity and I think that Counsel have the statements of Cheryl Hauk and Marilyn Brooks that were taken by the Police Department and have had an opportunity this morning to talk with both of these individuals. The Court does not wish to proceed until all Counsel have had an opportunity to eliminate any surprise in endorsing these individuals.

"The Court's interested in justice. The Court feels that the motion to endorse in its discretion should be sustained and so sustains that motion."

The defendants at this time were given copies of statements obtained by the prosecution from Marilyn Brooks and Cheryl Ann Hauk and had time to interview the witnesses. None of the appellants requested a continuance of the trial in order to defend against this new testimony. As to Evans, the accomplice, all defense counsel stated they had expected him to testify several days before when it was announced he was being severed from the joint trial and would enter a plea.

In evaluating late endorsement of witnesses the appellate court should not presume prejudice. Actual prejudice must be shown by an appellant such as will impair the ability of a defendant to defend against the charges. *State v. Rueckert,* 221 Kan. 727; *State v. Motor,* 220 Kan. 99, 551 P.2d 783 (1976).

All three defendants moved for a mistrial during the trial just before Evans testified and error is claimed thereon.

The applicable statute is K.S.A. 22-3423:

"(1) The trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because:

. . . .

"(c) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution;"

The State correctly points out that in *State v. McCorgary,* 224 Kan. 677, 687, 585 P.2d 1024 (1978), it is stated:

"The granting of a mistrial on this ground lies within the discretion of the trial court. *State v. Jakeway,* 221 Kan. 142, 148, 558 P.2d 113 (1976). A mistrial will not be declared under K.S.A. 22-3423(c) unless the rights of either the defendant or the state have been substantially prejudiced. *State v. Rhodes,* 219 Kan. 281, 283, 546 P.2d 1396 (1976)."

*McCorgary* was cited with approval in *State v. Cook,* 225 Kan. 259, 263, 589 P.2d 616 (1979), where Chief Justice Schroeder stated:

"Terminating a trial and declaring a mistrial on one of the statutory grounds

listed in K.S.A. 22-3423 is largely within the discretion of the trial court. A clear showing of abuse of discretion must be shown before the decision of the trial court will be set aside on appeal. *State v. McCorgary,* 224 Kan. 677, 687, 585 P.2d 1024 (1978); *State v. McQueen & Hardyway,* 224 Kan. 420, 427, 582 P.2d 251 (1978) and cases cited therein."

See also *State v. Baker,* 227 Kan. 377, 383, 607 P.2d 61 (1980).

We have carefully studied the record of the case. The action of Evans in entering a plea and testifying against the remaining defendants was extremely helpful to the State and harmful to the defendants. However, this would be true to a great extent regardless of whether it took place during the trial or before. The State had no control over the time Evans might decide to enter a plea. This court cannot say the trial court abused its discretion when it refused to grant a mistrial for it has not been pointed out what prejudice to defendants would have been prevented by granting a new trial. The testimony of Evans would be equally damaging to the defendants in either case and the outcome of a later trial would appear to be the same in view of the overwhelming evidence of the atrocities committed by those defendants.

All three appellants argue that the facts failed to establish aggravated kidnapping and cite *State v. Buggs,* 219 Kan. 203, 547 P.2d 720 (1976), at page 216:

"[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

"(*a*) Must not be slight, inconsequential and merely incidental to the other crime;

"(*b*) Must not be the kind inherent in the nature of the other crime; and

"(*c*) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection."

The defendants argue that since the victims were taken from a place of seclusion (the back room of the flower shop) to an outside place (a parking lot) this was not a kidnapping. The reason given is that this was the reverse of the situation in *Buggs* where the rape victim was taken from the outdoor parking lot into the Dairy Queen building.

The State, on the other hand, argues the back room of the flower shop was small and the defendants needed more room to rape and sodomize their victims. It is pointed out this happened after dark, behind the shop in a private parking lot, secluded from

the view of those who might be passing in front of the shop along the street.

The kidnapping statute, K.S.A. 21-3420(*b*), provides:

"Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:

. . . .

"(*b*) To facilitate flight or the commission of any crime;"

To be kidnapping under K.S.A. 21-3420(*b*) the taking of the victim does not have to be essential to the accomplishment of the underlying crime but it is sufficient if the taking is aimed at making it easier of accomplishment. *State v. Buggs,* 219 Kan. at 214, 215; see also *State v. Weigel,* 228 Kan. 194, 612 P.2d 636 (1980). The evidence was sufficient to establish a taking of the two women accomplished by force with the intent to hold the women and facilitate the commission of the crimes of rape and sodomy.

The next point is raised by Washington and Tucker and concerns a request to strike the jury panel. During questioning on voir dire a venireman, Kenneth E. Gordon, volunteered statements that the prosecutor had done well in choosing his assistants. He was referring to Miss Tedesco who was trying the case for the prosecution. He volunteered other information which indicated the prospective juror believed the police had to have substantial evidence before filing charges. His volunteer statements were interrupted by the assistant prosecutor and he was successfully removed from the panel for cause. After a court recess and argument on a motion for mistrial the court reconvened for trial. Curative measures were then undertaken by the court and by the assistant prosecutor. The remaining pool of veniremen were advised that any comments by Mr. Gordon were not evidence and should not be considered as such. Each subsequent venireman was examined to assure the court that Mr. Gordon's comments would not prevent each venireman from rendering a fair and impartial verdict according to the law and the evidence at the trial.

Again, granting a mistrial is a matter within the discretion of the trial court under K.S.A. 22-3423(1)(*c*) and a mistrial should not be declared unless the rights of either the defendant or the State have been substantially prejudiced. In this case adequate steps to preclude prejudice were taken and no prejudice has been

pointed out. *State v. McCorgary,* 224 Kan. 677. The purpose of voir dire examination of jurors is to determine the state of the minds of the veniremen so that a fair and impartial jury can be chosen. It is generally recognized that even though individual jurors on the panel may have indicated prejudice or bias that is not sufficient ground for a successful challenge to the entire panel. *State v. McQueen & Hardyway,* 224 Kan. at 427. The point is without merit.

Ferguson raises an issue on the refusal of the trial court to grant a new trial to him based on so-called newly discovered evidence. Ferguson argued on the motion that three handwritten statements allegedly drafted and signed by his codefendant, Arzo Tucker, Jr., constituted newly discovered evidence which entitled Ferguson to a new trial. The statements by Tucker merely alleged that Ferguson was not present when these crimes were committed.

A new trial may be granted under K.S.A. 60-259 for newly discovered evidence when it appears the rights of a party are substantially affected. In order for it to be newly discovered evidence it must be material to the cause of the movant and contain information which the movant with reasonable diligence could not have discovered and produced at the trial.

In *State v. Johnson,* 222 Kan. 465, 471, 565 P.2d 993 (1977), it is stated:

"The granting of a new trial for newly discovered evidence is in the trial court's discretion. (*State v. Larkin,* 212 Kan. 158, 510 P.2d 123, cert. den. 414 U.S. 848, 38 L.Ed.2d 95, 94 S.Ct. 134.) A new trial should not be granted on the ground of newly discovered evidence unless the evidence is of such materiality that it would be likely to produce a different result upon re-trial. (*State v. Hale,* 206 Kan. 521, 479 P.2d 902.) The credibility of the evidence offered in support of the motion is for the trial court's consideration. (*State v. Anderson,* 211 Kan. 148, 505 P.2d 691; *State v. Larkin,* supra.) The burden of proof is on defendant to show the alleged newly discovered evidence could not with reasonable diligence have been produced at trial. (*State v. Lora,* 213 Kan. 184, 515 P.2d 1086; *State v. Arney,* 218 Kan. 369, 544 P.2d 334.) The appellate review of an order denying a new trial is limited to whether the trial court abused its discretion. (*State v. Campbell,* 207 Kan. 152, 483 P.2d 495; *State v. Anderson,* supra.)"

The point is without merit. The trial court gave Ferguson the opportunity to produce his evidence but Mr. Tucker would not back up the proffered written statements. When Tucker would not testify the statements became impermissible hearsay. Coming from an accomplice the evidence would have been questionable. It was in direct contradiction to the testimony of the victims and

of Mr. Evans. The credibility of the statements was in grave doubt. There appears no reason why this evidence if admissible could not have been produced at trial, assuming Mr. Tucker would agree to testify. It is doubtful if such evidence would have materially affected or changed the outcome of the trial. We cannot say the trial court abused its discretion in refusing a new trial under the circumstances.

Strangely enough a similar issue was raised and rejected in *State v. Bryant,* 228 Kan. 239, 246, 613 P.2d 1348 (1980), where this same Clarence Ferguson had signed an affidavit recanting his former testimony at trial and stated that his accomplice Bryant had not participated in a filling station robbery.

Appellant Washington raises one final issue—whether the trial court erred in failing to sustain his motion for judgment of acquittal. Washington argues the evidence was insufficient to connect him with these crimes.

"A trial judge in passing on a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact therefrom, a reasonable mind, or rational trier of facts, might fairly conclude guilt beyond a reasonable doubt. *State v. Rodriquez,* 226 Kan. 558, 564, 601 P.2d 686 (1979). . . . The appellate court must be convinced that when the evidence is viewed in the light most favorable to the prosecution, a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Tillery,* 227 Kan. 342, 345, 606 P.2d 1031 (1980).

Evidence of the participation of Washington in these crimes was overwhelming. All three victims identified Washington at the trial as one of the four men who committed the crimes with which he was charged. Evans testified that Washington was with him in the flower shop. The point is without merit.

The judgments of conviction entered against Clarence E. Ferguson, Daley D. Washington, Jr., and Arzo Tucker, Jr., are affirmed.