NOT DESIGNATED FOR PUBLICATION

No. 115,407

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LEE ANDREW MITCHELL-PENNINGTON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed March 24, 2017.
Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., MALONE, J., and STUTZMAN, S.J.

*Per Curiam*:  Lee Andrew Mitchell-Pennington appeals the district court's summary denial of his K.S.A. 60-1507 motion. Mitchell-Pennington asserts that (1) the district court erred in denying his claims of ineffective assistance of appellate counsel; (2) the district court erred in denying his claims of ineffective assistance of trial counsel; and (3) the district court erred in denying his claim for a new trial based on newly discovered evidence. For the reasons stated herein, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

Following a jury trial, Mitchell-Pennington was convicted of three counts of aggravated robbery and one count of aggravated burglary. His convictions were affirmed by this court in *State v. Mitchell-Pennington*, No. 103,094, 2011 WL 4031485 (Kan. App. 2011) (unpublished opinion), and the underlying facts are set forth in that decision:

"In the early morning hours of October 5, 2008, Jeremy Mireles, Emilio Alva, and Joshua Little were in the apartment shared by Mireles and Alva on Alabama street in Lawrence. Mireles was in his bedroom, and Alva and Little were in the living room area. Mireles heard a knock on the door and he thought it was his girlfriend and Alva's girlfriend, so he headed for the living room. As Little opened the door, four men rushed into the apartment.

"The perpetrators attempted to hide their identities. Three of them wore bandanas covering the lower half of their faces and the fourth had a hood around his head. Mireles immediately recognized one of the perpetrators as Pennington because he had gone to school with him. Mireles recognized another one of the perpetrators as Dominic, an acquaintance who had been at the apartment to hang out just a few days before. Mireles testified that both Pennington and Dominic had guns and that Pennington made Mireles lay face down on the couch and then he put the gun to the back of Mireles' head. Mireles recognized the third man as D'Armon, a friend. Mireles testified that one of the burglars referred to Pennington as 'Lee' and then said, 'My bad L. My bad.'

"Mireles further testified that the men stole two Xboxes, a flat-screen TV, two laptops belonging to the two girlfriends, two cell phones, and Mireles' wallet. He testified the entire episode took about 10 minutes. Little testified the episode took 30 minutes. The burglars threatened to harm the three men if they called the police. After the burglars left, Mireles, Alva, and Little were scared and did not immediately call the police. They picked up their girlfriends and drove out to the country to talk about what to do. They eventually called the police 2 hours later, around 5 a.m. In his first interview with the police, Mireles said that he did not know the identity of the perpetrators. However, the second time he went to the police station, he told police that he knew the perpetrators and gave their names.

2

"On cross-examination at trial, Mireles admitted to drinking two beers on the night in question and also smoking some marijuana. Mireles admitted to not immediately calling the police and not identifying Pennington until the second interview he had with police. Defense counsel also questioned Mireles on his inconsistency regarding how many of the men had guns. Mireles testified that the only lights on in the apartment were the kitchen stove light and the blue screen from the TV.

"Both Little and Alva gave a similar account of the events on the evening in question. Alva testified that he too recognized Pennington and D'Armon as two of the burglars. Alva had also gone to school with Pennington and had seen him most recently a week before the incident. Alva said he also heard one of the men call Pennington by the name 'Lee' and that when Pennington yelled back at them to not call him by name, Alva recognized Pennington's voice as well.

"In addition to the testimony from the victims, the State also presented significant testimony from Pennington's sister, Lashell Mitchell. She testified that Pennington and another man came to her apartment on October 9, 2008, and told her essentially that they had been involved in a 'lick' a few days before at an apartment on Alabama Street in Lawrence. She took the term 'lick' to mean a home invasion. They also told her they had taken a flat-screen television and other items.

"The jury convicted Pennington on three counts of aggravated robbery and one count of aggravated burglary. Pennington filed a motion for durational departure, which the district court denied. The court sentenced Pennington to a presumptive term of 102 months for the primary crime of aggravated robbery and concurrent sentences of 59 months each for the other two aggravated robbery convictions. The court imposed a presumptive prison term of 32 months for the aggravated burglary charge and ordered the sentence to run consecutive to the aggravated robbery sentences. That made for a controlling sentence of 134 months' incarceration." 2011 WL 4031485, at *1-2.

On February 25, 2014, Mitchell-Pennington filed a K.S.A. 60-1507 motion alleging ineffective assistance of both trial and appellate counsel. Mitchell-Pennington also included a newly discovered evidence claim in his motion. On November 23, 2015, the district court filed a comprehensive 15-page memorandum decision denying Mitchell-Pennington's motion. Mitchell-Pennington filed a timely notice of appeal. Additional facts will be provided to address the issues.

INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Mitchell-Pennington alleges that his appellate counsel rendered ineffective assistance for several reasons. Mitchell-Pennington argues that his appellate counsel should have objected to the burden of proof jury instruction. He also argues that his appellate counsel abandoned evidentiary errors related to hearsay and impeachment evidence. Finally, Mitchell-Pennington argues that his appellate counsel failed to raise several instances of prosecutorial misconduct.

When the district court summarily denies a K.S.A. 60-1507 motion, an appellate court conducts de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

To prove a claim of ineffective assistance of appellate counsel, an appellant must show two things: (1) The performance of appellate counsel was deficient under the totality of the circumstances, and (2) the deficient performance prejudiced the defendant's direct appeal. *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

*Burden of proof jury instruction*

Mitchell-Pennington first asserts that his appellate counsel should have argued that the jury instruction given by the trial court improperly diluted the burden of proof. As a preliminary matter, Mitchell-Pennington did not raise this issue in his K.S.A. 60-1507 motion. Generally, a party cannot raise an issue for the first time on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). However, there are several exceptions to this general rule, including the following: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the district court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 1178 (2009).

Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 35) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. Mitchell-Pennington argues that this claim raises a question of law and consideration of his claim is necessary to prevent the fundamental denial of rights. We note that the State's brief concurs that it is appropriate for this court to consider this issue for the first time on appeal. Because the jury instruction issue involves only a question of law arising on admitted facts, we will address the issue for the first time on appeal.

Mitchell-Pennington's trial occurred in March 2009. Following a jury instruction conference, the parties agreed to the following instruction on reasonable doubt and the State's burden of proof:

5

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty until you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of any of the claims required to be proved by the State, you should find the defendant guilty."

This language of this instruction is derived from the 1995 version of PIK Crim. 3d 52.02. Neither party objected to the instruction. There are two differences between the 1995 version of PIK Crim. 3d 52.02 and the version that was in effect at the time of Mitchell-Pennington's trial. First, the word "until" in the first paragraph of the old instruction had been replaced with the word "unless." PIK Crim. 3d 52.02 (2004 Supp.). Second, the word "any" in the last sentence of the old instruction had been replaced with the word "each." PIK Crim. 3d 52.02 (2004 Supp.).

Had Mitchell-Pennington's appellate counsel raised the issue, the appellate court would have applied the "clearly erroneous" standard of review. See *State v. Wallin*, 52 Kan. App. 2d 256, 268, 366 P.3d 651 (2016). This standard applies when trial counsel does not object to a jury instruction. 52 Kan. App. 2d at 268. In determining whether a jury instruction was clearly erroneous, appellate courts perform a two-step analysis. First, "the court must determine whether there was any error at all by considering whether the subject instruction was both legally and factually appropriate, employing an unlimited review of the entire record." 52 Kan. App. 2d at 268. Second, "if the court finds error, it must assess whether it is firmly convinced the jury would have reached a different verdict without the error." 52 Kan. App. 2d at 268.

The Kansas Supreme Court has ruled that a trial court does not commit error by instructing the jury that "'[i]f you have no reasonable doubt as to the truth of any of the

6

claims required to be proved by the State, you should find the defendant guilty.'" *State v. Solis*, 305 Kan. 55, 69-70, 378 P.3d 532 (2016); *State v. Herbel*, 296 Kan. 1101, Syl. ¶ 9, 299 P.3d 292 (2013). Our Supreme Court has ruled that while the preferred instruction would substitute the word "any" in the last sentence with the word "each," an instruction using the word "any" in the last sentence is legally appropriate. *Solis*, 305 Kan. at 70; *Herbel*, 296 Kan. at 1120-24.

As for the use of the word "until" rather than the word "unless" in the first paragraph of the instruction, our Supreme Court has ruled that this is not reversible error. *State v. Smith*, 299 Kan. 962, Syl. ¶ 5, 327 P.3d 441 (2014); *State v. Wilkerson*, 278 Kan. 147, 158, 91 P.3d 1181 (2004). We note that the statutory source of the instruction on presumption of innocence is K.S.A. 2016 Supp. 21-5108(b) (formerly K.S.A. 21-3109), which provides: "A defendant is presumed to be innocent *until* proven guilty." (Emphasis added.) Thus, the instruction given to the jury in Mitchell-Pennington's case mirrored the statutory language on presumption of innocence. See *State v. McConnell*, 33 Kan. App. 2d 711, 714, 106 P.3d 1148 (2005).

Because using the outdated PIK language is not erroneous, the appellate court would not have granted Mitchell-Pennington any relief had his counsel raised the jury instruction issue in the direct appeal. Thus, appellate counsel did not render ineffective assistance by failing to raise the issue, and the district court did not err in summarily denying Mitchell-Pennington's K.S.A. 60-1507 motion on this claim.

*Alleged evidentiary errors*

Mitchell-Pennington argues that his appellate counsel abandoned several trial evidentiary errors. His first argument relates to the admission of hearsay evidence. Mitchell-Pennington does not identify the offending statements or cite to the place in the

record where they occurred. However, based on Mitchell-Pennington's statement of facts in his brief, it appears that he takes issue with statements given by Lashell Mitchell.

Lashell is Mitchell-Pennington's sister. She testified that Mitchell-Pennington and one of his accomplices, Dominic, came to her house where they discussed a "lick" on Alabama Street in Lawrence. Lashell explained that "lick" is slang and she interpreted it to mean that they had committed a burglary. Mitchell-Pennington and Dominic told Lashell that they wanted to stay with her because they were running from the law. The State asked Lashell if the two men had told her about what happened to another accomplice, D'Armon. Mitchell-Pennington objected to "anything that would be said by the individual[] referred to as Dominic" on the basis of hearsay. The district court sustained the objection and the State's attorney said she would rephrase the question.

The State's attorney narrowed the question and asked Lashell if Mitchell-Pennington had told her what had happened with D'Armon. Lashell responded that Mitchell-Pennington told her D'Armon had been caught and was planning to turn on his accomplices. The State's attorney asked Lashell if Mitchell-Pennington told her what he had taken during the home invasion. Lashell responded: "I heard, and I can't really discuss what he said. He didn't really say what the other young man said, but they had took flat screen T.Vs." Mitchell-Pennington objected again to "anything said by the other individual" and the court sustained the objection.

The State's attorney asked Lashell if Mitchell-Pennington had sold any of the stolen goods and Lashell stated that she knew the goods were sold but that she could not say why she knew that because "it keeps getting shot down." Mitchell-Pennington objected again because it was not clear who said what. Finally, Lashell explained that she had made her brother "shut up about it" because she "didn't want to hear it."

8

Hearsay is "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." K.S.A. 2015 Supp. 60-460. Lashell's testimony related to statements made by Mitchell-Pennington and his accomplice, Dominic. The out-of-court statements made by Mitchell-Pennington and Dominic were offered for the truth of the matter asserted, making them hearsay. Hearsay is generally inadmissible, but there are several exceptions. K.S.A. 2015 Supp. 60-460.

In denying Mitchell-Pennington's K.S.A. 60-1507 motion, the district court found that Lashell's testimony was admissible under K.S.A. 2015 Supp. 60-460. The district court ruled that out-of-court statements made by Mitchell-Pennington would have been admissible under K.S.A. 2015 Supp. 60-460(g), which states that hearsay is admissible when it is a statement made by "the person who is the party to the action." The district court ruled that out-of-court statements made by Dominic would have been admissible under K.S.A. 2015 Supp. 60-460(h)(2), which states that hearsay is admissible "[a]s against a party, a statement . . . of which the party with knowledge of the content thereof has, by words or other conduct, manifested the party's adoption or belief in its truth."

In his K.S.A. 60-1507 motion, Mitchell-Pennington argued that "not a single word of Lashell's testimony was admissible and the entirety thereof violated [Mitchell-Pennington's] confrontation rights." On appeal, Mitchell-Pennington only dedicates half of a paragraph to his argument that Lashell's testimony was inadmissible hearsay, and he limits this argument to the out-of-court statements allegedly made by Dominic. Mitchell-Pennington notes that "[t]he district court sustained the objection of the defendant as to hearsay, but failed to strike the prior hearsay testimony or instruct the jurors to disregard that which was sustained to be inadmissible." Mitchell-Pennington argues that his appellate counsel should have raised this evidentiary issue because he was denied "his right to confront witnesses against him."

Mitchell-Pennington's argument on appeal on this issue fails for three reasons. First, Mitchell-Pennington fails to adequately brief the issue. While he makes the conclusory statement that his confrontation rights were violated, he does not explain how. A point raised incidentally in a brief and not argued therein is deemed abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

Second, Mitchell-Pennington only argues that the district court "failed to strike" the hearsay testimony of Lashell that the district court sustained as inadmissible. However, it appears from the record that nothing of substance was said by Lashell about Dominic's out-of-court statements that needed to be struck by the district court.

Third, in denying Mitchell-Pennington's K.S.A. 60-1507 motion, the district court correctly found that out-of-court statements made by Dominic would have been admissible under K.S.A. 2015 Supp. 60-460(h)(2). Lashell testified that Dominic and Mitchell-Pennington were discussing the robbery at her house. Lashell stated that the two men told her that they got drunk, went to a house, and robbed the people inside. The two men also told Lashell they were running from the law. Mitchell-Pennington never refuted any of the statements made by Dominic.

"[P]rejudicial statements made in the defendant's presence and tolerated without resentment, explanation, or denial may be admissible as adoptive admissions under K.S.A. 60-460(h)(2)." *State v. Ransom*, 288 Kan. 697, 711-12, 207 P.3d 208 (2009). Silence can constitute an adoptive admission if the evidence shows:

> "'(1) [T]he statement was extrajudicial, (2) it was incriminatory or accusative in import, (3) it was one to which an innocent person would in the situation and surrounding circumstances naturally respond, (4) it was uttered in the presence and hearing of the accused, (5) the accused was capable of understanding the incriminatory meaning of the statements, (6) the accused had sufficient knowledge of the facts embraced in the

10

statement to reply thereto, and (7) the accused was at liberty to deny it or to reply thereto.' [Citation omitted.]" *Ransom*, 288 Kan. at 712.

Here, the factors set forth in *Ransom* were met as to Dominic's out-of-court statements that were made to Mitchell-Pennington and never refuted by him. The district court correctly found that Dominic's out-of-court statements would have been admissible as adoptive admissions under K.S.A. 2015 Supp. 60-460(h)(2). Thus, appellate counsel did not render ineffective assistance by failing to raise the issue, and the district court did not err in denying Mitchell-Pennington's K.S.A. 60-1507 motion on this claim.

Next, Mitchell-Pennington asserts that the trial court erred by disallowing impeachment evidence of Lashell. During cross-examination of Lashell, Mitchell-Pennington's attorney asked her if she had ever engaged in crimes that involved dishonesty such as theft, deception, or forgery. Lashell replied: "I have a few thefts and I have a robbery. I don't know if you need the aggravated batteries." Mitchell-Pennington's attorney then began to ask, "And are you presently on—" when the State objected. The attorneys met at the bench to discuss the issue outside the hearing of the jury. The State objected to questioning regarding the fact that Lashell was on parole for aggravated battery because it was not related to a crime of dishonesty. The district court agreed, sustaining the objection because Lashell's probation status was irrelevant.

Mitchell-Pennington argues that his appellate counsel erred by failing to challenge the district court's ruling on this issue. Like with the previous issue, Mitchell-Pennington only dedicates half of a paragraph to this argument. He does not cite any caselaw or rules of evidence to support his position. A point raised incidentally in a brief and not argued therein is deemed abandoned. *Friedman*, 296 Kan. at 645.

Moreover, Mitchell-Pennington attempts to make a different argument on appeal than he made at his trial. In his brief, Mitchell-Pennington asserts that the trial court erred

11

by not allowing him to impeach Lashell involving "her status on parole and the consequences on her parole status if she failed to testify for the state." However, Mitchell-Pennington's trial counsel did not make this specific objection to the trial court. In fact, Mitchell-Pennington's trial counsel said that he had "no problems" with not questioning Lashell about the fact that she was on parole for aggravated battery. He only wanted to ask whether Lashell was on parole or probation for crimes of dishonesty.

In any event, there is nothing in the record to support Mitchell-Pennington's inference that Lashell only testified for the State because she was concerned about the consequences on her parole if she failed to do so. K.S.A. 60-405 states that erroneous exclusion of evidence is not a reason for setting aside a verdict or reversing a judgment "unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers." Mitchell-Pennington's trial counsel did not proffer any evidence that Lashell only testified for the State because she was concerned about the consequences on her parole if she failed to do so. Without such a proffer, Mitchell-Pennington's appellate counsel would not have been successful in raising this issue on appeal; thus, the district court did not err in summarily denying this claim.

Finally, Mitchell-Pennington alleges that his appellate counsel was ineffective for failing to argue that testimony on Mitchell-Pennington's attempt to run away from the police was inadmissible. At trial, a police officer testified that while he was assisting another officer with a traffic stop, Mitchell-Pennington jumped out of the car and attempted to run away. Before the officer testified, Mitchell-Pennington's attorney objected to testimony that Mitchell-Pennington tried to evade the police. The State explained that it had called the witness because "the fact that [Mitchell-Pennington] took off running when he [saw] a police officer is indicative of consciousness of guilt." The district court overruled Mitchell-Pennington's objection.

Mitchell-Pennington does not explain why his appellate counsel was ineffective for failing to raise this issue. His briefing on this issue is limited to one quote regarding relevance and a statement (with no citations to the record) that "there were several trial objections made . . . which warranted appellate review, as well as prosecutorial misconduct." A point raised incidentally in a brief and not argued therein is deemed abandoned. *Friedman*, 296 Kan. at 645.

In any event, appellate counsel would have been unsuccessful in challenging the admission of the officer's testimony on appeal. Generally, "evidence of flight may be admissible in order to establish the defendant's consciousness of guilt." *State v. Walker*, 226 Kan. 20, 21, 595 P.2d 1098 (1979). Thus, the trial court did not err in overruling the objection to the testimony about Mitchell-Pennington's attempt to evade the police.

*Claims of prosecutorial misconduct*

Mitchell-Pennington's final argument regarding the ineffectiveness of his appellate counsel relates to statements made by the prosecutor. Mitchell-Pennington asserts that his appellate counsel should have raised three claims of prosecutorial misconduct.

In *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), the Kansas Supreme Court developed a new framework for prosecutorial error to replace the old prosecutorial misconduct analysis under *State v. Tosh*, 278 Kan. 83, 91 P.3d 1204 (2004). Mitchell-Pennington's direct appeal was in 2011, when the old framework would have applied. While the Kansas Supreme Court has applied the old framework to cases that were briefed before *Sherman*, in doing so the court has noted that the same result would have been reached had it applied the *Sherman* framework. See *State v. Netherland*, 305 Kan. 167, 181, 379 P.3d 1117 (2016) ("We will therefore apply our old prosecutorial misconduct framework to the claim advanced here, noting only that application of the new framework would not make a difference in the outcome."); *State v. Kleypas*, 305

13

Kan. 224, 314, 382 P.3d 373 (2016) ("[W]e will discuss the analysis under both *Tosh* and *Sherman*. Kleypas does not establish reversible error under either.").

Appellate review of an allegation of prosecutorial misconduct requires a two-step analysis. First, the court determines whether the prosecutor's comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. This analysis is the same under both the old and new frameworks. *Kleypas*, 305 Kan. at 314-16.

If there was misconduct, then the second step of the analysis under the old framework is determining whether the comments prejudiced the jury against the defendant and denied the defendant a fair trial. In making this determination, the "appellate court considers three factors:  (1) whether the misconduct was gross and flagrant, (2) whether it was motivated by prosecutorial ill will, and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors." 305 Kan. at 314.

The three-factor test is not used under the new *Sherman* framework. Instead, "the prejudice analysis will focus on whether the error prejudiced the defendant's due process rights to a fair trial; if a due process violation occurs, prejudice will be assessed by applying the *Chapman* constitutional error standard." *Kleypas*, 305 Kan. at 316. An error is harmless under *Chapman* if "the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.,* proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

Mitchell-Pennington first claims that there was reversible error at his trial because the prosecutor vouched for a witness' credibility. During closing argument the prosecutor stated:

14

"[Mitchell-Pennington's trial counsel] talked a little bit about Lashell [Mitchell]. That maybe she was hiding something or she was making this up. Why would she do that? Why would his sister come in here and lie to you and tell you about these things in detail that she's heard from Mr. Mitchell-Pennington and Dominic. *This is not a person that lies*. She overshared. [Mitchell-Pennington's trial counsel] asked you about whether she had any convictions about theft and she said I did this, this and this. And I've got a couple of robberies and do you want my aggravated battery too. Is this a person that is hiding something from you? I don't think so. This is a person that lays something out. And it's your job as jurors to evaluate the credibility and each and every witnesses' credibility that come in here and sits in that chair. It's up to you to determine whether she was telling you the truth." (Emphasis added.)

Mitchell-Pennington asserts that his appellate counsel should have argued that the prosecutor inappropriately vouched for Lashell's credibility when the prosecutor said, "This is not a person that lies." Mitchell-Pennington argues that the prosecutor's statement prejudiced him and denied him a fair trial.

In denying Mitchell-Pennington's K.S.A. 60-1507 motion on this issue, the district court found that the prosecutor improperly vouched for Lashell's credibility, but that any error was harmless. It is well established that a prosecutor may not state a personal opinion to vouch for the credibility of his or her own witness. *State v. Elnicki*, 279 Kan. 47, 64, 105 P.3d 1222 (2005). We agree with the district court that the prosecutor at Mitchell-Pennington's trial improperly vouched for Lashell's credibility. We will address any prejudice caused by the prosecutor's improper statement later in this opinion.

Second, Mitchell-Pennington asserts that the prosecutor misstated facts or referred to facts not in evidence. During opening statements, the prosecutor stated that one of the victims, Jeremy Mireles, knew Mitchell-Pennington because he had gone to high school with him. The prosecutor also said that another victim, Emilio Alva, would be able to testify that he recognized Mitchell-Pennington "by his eyes and his hair and the way his

15

head looked." The testimony revealed that it was actually Alva who went to high school with Mitchell-Pennington. Mireles went to elementary and middle school with Mitchell-Pennington and saw him during high school, but he did not actually attend the same high school with him. Similarly, it was actually Mireles who identified Mitchell-Pennington by looking at him. Because the lower half of Mitchell-Pennington's face was covered with a bandana, it is a reasonable inference that Mireles identified Mitchell-Pennington by looking at the uncovered parts of his face, including his eyes, hair, and head shape. Alva recognized Mitchell-Pennington because of Mitchell-Pennington's voice and because one of his accomplices said his name.

The prosecutor did not misstate facts in evidence in the opening statement. Rather, the prosecutor merely mixed up the names of the two victims in the case, but the prosecutor accurately stated the evidence that would be introduced at trial. There was no prosecutorial misconduct on this point for Mitchell-Pennington's appellate counsel to raise in the direct appeal.

Third, Mitchell-Pennington asserts that the prosecutor misstated the law. During voir dire, the prosecutor made the following statement while discussing the reasonable doubt standard:  "I want to be clear that, that standard is—it's not beyond all doubt. The state doesn't have to prove absolutely 100 percent that a crime occurred just that it occurred beyond a reasonable doubt. So, I would ask you to hold me to that standard."

Mitchell-Pennington claims that his appellate counsel should have argued that "the prosecutor made misstatements of law during voir dire regarding the State's burden of proof that ultimately shaped the entire trial by attempting to define reasonable doubt in some numerical sense of less tha[n] 100 percent." In denying Mitchell-Pennington's K.S.A. 60-1507 motion on this issue, the district court ruled that the statement was "not a misstatement of the law nor [was] it misleading, nor [was] it contrary to any of the law upon which the jury was instructed."

16

"It is improper for the prosecutor to . . . misstate the legal standard of the burden of proof." *State v. Stone*, 291 Kan. 13, 18, 237 P.3d 1229 (2010). In particular, a prosecutor must exercise caution in attempting to quantify reasonable doubt if the prosecutor's statement dilutes the State's burden of proof. See *State v. Crawford*, 300 Kan. 740, 755, 334 P.3d 311 (2014). However, prosecutors are permitted to "illustrate[] the difference between proof beyond a reasonable doubt and proof beyond any and all doubt." *State v. Brown*, No. 113,551, 2016 WL 3659792, at *2 (Kan. App. 2016) (unpublished opinion) (citing *State v. Stevenson*, 297 Kan. 49, 53, 298 P.3d 303 [2013]).

Here, the prosecutor did not misstate the law by explaining to the prospective jury during voir dire that beyond reasonable doubt does not mean 100 percent. The prosecutor was merely pointing out that beyond reasonable doubt does not mean beyond all doubt, which is permissible. However, even if the prosecutor misstated the law on this point, Mitchell-Pennington must still show prejudice, as we will now address.

The second step of the prosecutorial misconduct analysis is whether the comments prejudiced the jury against Mitchell-Pennington and denied him a fair trial. Under the old framework, an appellate court considered whether the prosecutor's conduct was gross and flagrant, whether it was motivated by ill will, and whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of the jurors. *State v. Fisher*, 304 Kan. 242, 251, 373 P.3d 781 (2016).

As we discussed, the prosecutor at Mitchell-Pennington's trial improperly vouched for Lashell's credibility during closing argument. However, the prosecutor's conduct was not gross or flagrant. Factors that suggest gross and flagrant conduct include "whether the misconduct was repeated, was emphasized, violated a long-standing rule, violated a clear and unequivocal rule, or violated a rule designed to protect a constitutional right." *State v. Marshall*, 294 Kan. 850, Syl. ¶ 6, 281 P.3d 1112 (2012). The prosecutor did not repeat or emphasize the statement regarding Lashell's credibility. In fact, the prosecutor ended her

17

statement by reminding the jurors that it was their job to evaluate witness credibility and it was up to them to determine whether Lashell was telling the truth.

The prosecutor's conduct did not appear to be motivated by ill will. A prosecutor's ill will is often "reflected through deliberate and repeated misconduct or indifference to a court's rulings." *State v. Madkins,* 42 Kan. App. 2d 955, 961, 219 P.3d 831 (2009). The prosecutor's conduct was not repeated—she only made one statement regarding Lashell's credibility. There were no court rulings which the prosecutor disregarded.

Moreover, the eyewitness identification evidence was of such a direct and overwhelming nature that the prosecutor's statement likely had little weight in the minds of the jurors. The victims identified Mitchell-Pennington by his voice, his appearance, and the fact that one of his accomplices called him "Lee." This evidence is also strong enough to survive the *Chapman* constitutional error standard used under the new prosecutorial error framework. Thus, although Mitchell-Pennington's appellate counsel could have legitimately argued prosecutorial misconduct in the direct appeal, Mitchell-Pennington is unable to establish that the outcome of the appeal would have been different had the issue been raised.

Finally, Mitchell-Pennington argues that his appellate counsel should have argued that cumulative errors denied him a fair trial. The test for cumulative error is whether the totality of the circumstances establish that the defendant was substantially prejudiced by cumulative errors and was denied a fair trial. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). Here, Mitchell-Pennington only established one error—when the prosecutor improperly vouched for witness credibility. "Cumulative error will not be found when the record fails to support the errors raised on appeal by the defendant. [Citations omitted]. One error is insufficient to support reversal under the cumulative effect rule." *State v. Cofield*, 288 Kan. 367, 378, 203 P.3d 1261 (2009). Thus, appellate counsel was not ineffective for failing to make a cumulative error argument.

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Next, Mitchell-Pennington asserts that the district court erred in denying his claims of ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]).

Mitchell-Pennington first argues that his trial counsel failed to adequately investigate his case. He argues that "[a] reasonably thorough investigation would likely have revealed Lashell Mitchell's testimony would consist[] of inadmissible hearsay, and objections could and should have been made to the content of her testimony outside the presence of the jury." His appellate brief does not further explain how a more "thorough investigation" would have prevented Lashell from providing inadmissible hearsay.

Mitchell-Pennington made a different argument in his K.S.A. 60-1507 motion. There, he stated: "Had counsel interviewed the State's witnesses he would [have] learned that Lashell Mitchell was coerced into giving false testimony for the State in order to not lose her children and not go back to prison on a parole violation." Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 35) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. Mitchell-Pennington has not complied with this rule. Our Supreme Court has held that litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed and will be deemed waived or abandoned. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014).

In any event, Mitchell-Pennington's claim that he raises on appeal fails on the merits. As explained earlier, Lashell's testimony as to Mitchell-Pennington's statements would have been admissible under K.S.A. 2015 Supp. 60-460(g) because he was a party to the action. Lashell's testimony as to Dominic's out-of-court statements would have been admissible as an adoptive admission under K.S.A. 2015 Supp. 60-460(h)(2). A review of the record does not show that the performance of Mitchell-Pennington's trial counsel was deficient in handling Lashell's testimony or that any further investigation by trial counsel would have made a difference.

Next, Mitchell-Pennington argues that during voir dire and closing argument, his "trial counsel made serious misstatements of law related to the state's burden of proof and the concept of reasonable doubt." The first statement that Mitchell-Pennington takes issue with is when, during voir dire, his trial counsel stated the following: "What is proof beyond a reasonable doubt? That is something for you to decide as jurors. . . . And as [the prosecutor] discussed that's not 100 percent evidence. It's not everything is crossed off, but it's certainly not more." As explained above, the prosecutor did not err by explaining that beyond reasonable doubt does not mean 100 percent. The prosecutor was pointing out that beyond reasonable doubt does not mean beyond all doubt, which is permissible. Mitchell-Pennington's trial counsel was doing the same thing. Trial counsel's performance was not deficient for making this legal distinction.

Mitchell-Pennington also appears to take issue with the following statement made by his trial counsel during closing argument:

> "[T]he most significant [jury instruction] that we are concerned with is number 2, which indicates you must use—the test you must use in determining whether Lee Andrew Mitchell-Pennington is guilty or not guilty is, if you have a reasonable doubt as to the truth of any claim required to be proven by state, and that's one of identification. That Lee Andrew Mitchell-Pennington was there and participated in this. If you have reasonable doubt he must be found not guilty."

20

Mitchell-Pennington takes issue with the fact that his attorney specifically highlighted identification as an issue. He argues that by isolating his theory of defense to only one element the State was required to prove, his attorney misstated the State's burden of proof as to the other elements of the charges.

Mitchell-Pennington did not raise this issue in his K.S.A. 60-1507 motion, and he fails to comply with Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 35) to permit the issue from being raised for the first time on appeal. Thus, this issue is improperly briefed and is abandoned. See *Williams*, 298 Kan. at 1085. In any event, the language Mitchell-Pennington's trial counsel used tracked the language of the jury instruction and did not misstate the law. The fact that Mitchell-Pennington's trial counsel stressed identification as the key issue before the jury did not amount to deficient performance under the circumstances of this case.

Finally, Mitchell-Pennington argues that his trial counsel was ineffective for failing to object to the burden of proof instruction. But as we have already discussed, the jury instruction was not erroneous. The fact that Mitchell-Pennington's trial counsel failed to object to the instruction does not amount to deficient performance. Thus, we conclude that the district court did not err in rejecting each of Mitchell-Pennington's claims of ineffective assistance of trial counsel.

CLAIM OF NEWLY DISCOVERED EVIDENCE

Mitchell-Pennington's final argument is that the district court erred by summarily denying the newly discovered evidence claim that he included in his K.S.A. 60-1507 motion. In his motion, Mitchell-Pennington claimed that one of his codefendants, Dominic Gaston, had "issued a sworn affidavit stating that [Mitchell-Pennington] was not one of his accomplices in the October 5, 2008 robbery of the victims in this case." Mitchell-Pennington asserted that his own attorney "never bothered to interview any of

21

the others charged in the robbery to see if they would testify on [his] behalf." Mitchell-Pennington also claimed that Gaston's attorney "probably would not have permitted Mr. Gaston to speak up until after he completed his guilty plea and was sentenced." Mitchell-Pennington argued that the evidence was newly available because he "could not have obtained the affidavit from Gaston prior to the appeal being filed in his case."

To place the events in a timeline, the incident giving rise to the criminal charges against Mitchell-Pennington occurred in 2008. Mitchell-Pennington was convicted of the charges in 2009. Gaston's written statement was signed on June 21, 2010. Mitchell-Pennington filed his K.S.A. 60-1507 motion on February 25, 2014. Although the motion referred to Gaston's statement, it was not attached to the motion. The State filed a motion to summarily deny the K.S.A. 60-1507 motion on June 25, 2014, which asserted that Mitchell-Pennington had not provided any affidavit to support his claim. Mitchell-Pennington, through counsel, filed a response to the State's motion for summary denial on April 17, 2015, and attached a copy of Gaston's written statement to that response.

In denying Mitchell-Pennington's K.S.A. 60-1507 motion on this claim the district court found that Mitchell-Pennington had failed to establish that the evidence was, in fact, newly discovered. Specifically, the district court found that there was no evidence before the court that Gaston was unwilling to testify at Mitchell-Pennington's trial and there was no proffer from Mitchell-Pennington as to why the affidavit could not have been obtained earlier.

We first note that Gaston's written statement, which is included in the record on appeal, is insufficient as to form. Although Mitchell-Pennington refers to the statement as a "sworn affidavit," the document, in fact, is not a sworn statement. The district court could have rejected the statement as newly discovered evidence on this ground alone.

22

Moreover, we agree with the district court that Mitchell-Pennington failed to establish that the evidence was, in fact, newly discovered. A new trial may be granted for newly discovered evidence when it appears the rights of a party are substantially affected. In order to qualify as newly discovered evidence, it must be material to the cause of action and contain information which the movant with reasonable diligence could not have discovered and produced at the trial. *State v. Ferguson, Washington & Tucker*, 228 Kan. 522, Syl. ¶ 7, 618 P.2d 1186 (1980). In that case, Ferguson argued that the court should grant him a new trial because one of his codefendants had allegedly drafted and signed a statement indicating that Ferguson was not present when the crimes were committed. The Kansas Supreme Court rejected Ferguson's argument, holding that "[t]here appears no reason why this evidence if admissible could not have been produced at trial, assuming [the codefendant] would agree to testify." 228 Kan. at 531.

Mitchell-Pennington argues that his evidence was newly available because Gaston's attorney "probably would not have permitted" Gaston to speak up while a criminal case was pending against him. But as our Supreme Court indicates in *Ferguson*, we cannot presume that Gaston would have been unavailable to testify at Mitchell-Pennington's trial simply because criminal charges were pending against him. Gaston would not have been deemed an unavailable witness until he took the stand and refused to testify on Mitchell-Pennington's behalf.

Thus, we agree with the district court that Mitchell-Pennington failed to show why the evidence presented in his K.S.A. 60-1507 proceeding could not have been discovered and produced at trial with reasonable diligence. For this reason, we conclude that the district court did not err in denying Mitchell-Pennington's claim for relief based on newly discovered evidence.

Affirmed.